**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 11-cv-00021-MSK

HAL LEWIS HEBERT,

      Petitioner,

v.

KEVIN MILYARD, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

---

THIS MATTER comes before the Court on the Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 ("Petition") (#3) filed by *pro se* Petitioner Hal Lewis Hebert.

Petitioner also has filed a memorandum in support of the Petition ("Memorandum in Support")

(#5).  Respondents have filed an Answer (#19), and Petitioner has filed a Traverse (#23).  In

addition, on June 13, 2011, Petitioner filed an "Addendum (Fifth Amendment Claim) in

Supplement to Civil Action 11-cv-00021-MSK" (#26) that the Court has construed as a motion

to amend the Petition.  Respondents have filed a Response (#31) to the motion to amend and

Petitioner has filed a Reply (#34).  For the reasons stated below, the motion to amend will be

granted.  After reviewing the pertinent portions of the record in this case including the Petition,

the Memorandum in Support, the Answer, the Traverse, the Response, the Reply, and the state

court record, the Court **FINDS** and **CONCLUDES** that the Petition should be denied.

## I. Background

Petitioner is challenging the validity of his conviction in Denver District Court case

number 01CR2554.  The following summary of the evidence presented at Petitioner's trial,

which is consistent with the Court's review of the state court record, is taken from the trial

court's order denying a postconviction motion.

> The victim, Carol Hebert, was last heard from at 4:32 p.m. on April 11, 2001 when she left a voice mail with a friend. Around 5:00 p.m. [Petitioner], the victim's husband, was seen by a neighbor backing the victim's car trunk first into the garage and shutting the garage door.  The neighbor never before saw [Petitioner] back either his own car or the victim's car into the garage.  Around 6:00 p.m., [Petitioner] went to the Campus Lounge, a neighborhood bar that he and his wife frequented. [Petitioner] was sweaty, did not follow his usual routine, and had three drinks over the course of twenty minutes.

> Around midnight [Petitioner] called a friend, John Mason, and stated that he had just woken up from a nap and that Carol had gone shopping earlier in the evening but had not yet returned home.  Mr. Mason offered to come over, but [Petitioner] refused his offer.  [Petitioner] then returned to the Campus Lounge and asked if they had seen his wife.  At 2:00 a.m. [Petitioner] drove to the District 3 police station where he reported that his wife was missing.  The police officer on duty called a taxi for [Petitioner] because he appeared to be intoxicated.

> Around 11:00 p.m. on the 11th, the victim's car was spotted parked and running on the 1500 block of Valentia Street in east Denver.  The next day at 4:00 p.m., a neighborhood resident and his cousin found the car with the windows down and still running, and spotted a purse sitting on the front console.  Upon inspecting the car, the two discovered the victim's body in the trunk and immediately called 911.  When police arrived they ran a motor vehicle report and found that the car belonged to Carol Hebert of 655 South Monroe Way.

> That evening the Police set up surveillance at the Hebert home and later detained [Petitioner] when he emerged from the house to answer the door.  Police then performed a search of the house and found blood droplets leading from the office to the garage, as well as on the top of one of [Petitioner's] shoes which was sitting near the front door.  They also noticed that there seemed to have been an attempt to clean some of the blood from

2

the carpet in the office.

Further investigation revealed that the victim was most likely shot while seated at her desk and then carried or dragged from the office to the garage, where her body was placed in the trunk of her car.  The blood splatter [sic], suggested that the victim was sitting at her desk facing the wall and was shot, at close range, in the back of the head.  Chemical testing of the area showed the residue of a substantial amount of blood showing a trail of the blood resulting from the dragging of the victim to the garage. There was an attempt to clean the home of the blood.

Detectives also discovered a makeshift shooting range in the basement of the Heberts' home where they found thirty-two spent .22 caliber shell casings.  They also recovered a Listerine bottle with a bullet hole through the bottom from the firing range. The Listerine bottle had been used as a silencer.

Another Listerine bottle, also with a bullet hole through the bottom, was recovered from the trunk of the victim's car with the victim.  Small pieces of plastic was [sic] recovered from the victim's hair near the entry wound and the uncontroverted evidence was that the pieces of plastic came from the bottom of that Listerine bottle when the bullet exited the bottle.  There was gunshot residue in both Listerine bottles, and it was more likely than not that the residue in each bottle was from a .22 caliber gun.

The police found no signs of forced entry into the house. Additionally, there were no signs of a struggle in the house and no defensive wounds on the victim.

The above events happened while [Petitioner] was living at home.

There were two "confessions" by [Petitioner].  First, Kerry Bleakney, [Petitioner's] former lover, testified that [Petitioner] had sent her several letters while he was in jail.  While Ms. Bleakney had destroyed some of the letters, she testified that in one letter [Petitioner] had stated that he would never intentionally hurt Carol, but there had been a terrible accident and Carol had died.  Second, in May of 2002 when [Petitioner] was picked up by a bondsman, [Petitioner] stated that he had never loved someone so much and that he did not mean to intentionally kill his wife.

> The Prosecution also presented the testimony of Linda
> Davis, who testified that that [sic] [Petitioner] had given her
> husband a mystery novel through a book club exchange.  In part of
> the book, the characters discuss disposing of a body by placing it
> in the trunk of the victim's car and leaving the car in a bad
> neighborhood with the doors unlocked and the keys in the ignition.

(#31-2 at 1-3.)

The initial entry and search of Petitioner's home following his arrest was conducted without a search warrant.  Later that evening, based in part on information obtained in their initial warrantless search, the police obtained and executed a warrant to search Petitioner's home a second time.

Prior to trial, Petitioner's motions to suppress were granted by the trial court and the prosecution appealed.  The Colorado Supreme Court reversed the trial court because, although the initial warrantless entry and search of Petitioner's home violated the Fourth Amendment, the search warrant affidavit, after being redacted to eliminate the information obtained during the unconstitutional warrantless search, established probable cause to issue a search warrant for the second search of Petitioner's home.  *People v. Hebert*, 46 P.3d 473 (Colo. 2002).  Petitioner subsequently was convicted by a jury in June 2003 of first degree murder and he was sentenced to life in prison without the possibility of parole.  The judgment of conviction was affirmed on direct appeal.  *See People v. Hebert*, No. 03CA1471 (Colo. App. Feb. 15, 2007) (#9-2) (unpublished).  On November 5, 2007, the Colorado Supreme Court denied Petitioner's petition for writ of certiorari on direct appeal.  (*See* #9-4.)

On January 31, 2008, Petitioner filed in the trial court a postconviction motion to vacate his conviction based on witness perjury and newly discovered evidence.  (*See* #31-1.)  On May 27, 2009, the trial court denied that motion.  (*See* #31-2.)  The trial court's order was affirmed on

appeal.  *See People v. Hebert*, No. 09CA1423 (Colo. App. Mar. 10, 2011) (#31-6) (unpublished).

The Petition was filed on January 6, 2011.  Petitioner asserts three claims for relief in the Petition labeled "Illegal Search," "Illegal Seizure," and "Void Judgment" and he identifies each claim as a Fourth Amendment claim.  Petitioner does not assert any specific facts in support of the Fourth Amendment claims in the Petition.  Instead, he refers to the Memorandum in Support for a discussion of the facts supporting the Fourth Amendment claims.  Based on Petitioner's discussion of the Fourth Amendment claims in the Memorandum in Support, the Court determined he is challenging the warrantless search of his home in the first claim, his warrantless arrest in the second claim, and the sufficiency of the redacted affidavit that was used to support probable cause for issuance of a search warrant in the third claim.  The Court previously dismissed Petitioner's claims challenging the original warrantless search and the warrantless arrest, claims one and two in the Petition, as unexhausted and procedurally barred.  Therefore, with respect to the Fourth Amendment claims, only Petitioner's claim challenging the legality of the second search of his home based upon his contention that the search warrant affidavit contained intentionally false and inaccurate statements, the third claim in the Petition, remains to be addressed.

**II. Motion to Amend**

In his motion to amend, Petitioner seeks permission to raise a due process claim under *Brady v. Maryland*, 373 U.S. 83 (1963).  Petitioner asserts in the *Brady* claim that the prosecution deliberately withheld exculpatory evidence regarding the criminal history of a prosecution witness that was discovered after Petitioner was convicted.

Respondents do not oppose the motion to amend.  Respondents concede that the *Brady*

claim is timely and that the *Brady* claim was raised as a federal constitutional claim in the

Colorado Court of Appeals in the state court postconviction proceedings.  However,

Respondents assert that the *Brady* claim is not exhausted because Petitioner did not seek

certiorari review in the Colorado Supreme Court in the state court postconviction proceedings.

Respondents acknowledge that, pursuant to Rule 51.1(a) of the Colorado Appellate Rules, a

defendant is not required to seek certiorari review in the Colorado Supreme Court "in order to be

deemed to have exhausted all available state remedies respecting a claim of error."  Respondents

further acknowledge the Court's previous ruling in another case that, in light of C.A.R. 51.1(a), a

petitioner is not required to present his claims to the Colorado Supreme Court as a prerequisite to

federal habeas corpus review.  *See Trujillo v. Hartley*, No. 07-cv-02337-MSK, 2010 WL

2692173 at *6 (D. Colo. July 6, 2010).  For the same reasons discussed in *Trujillo*, the Court

finds that Petitioner's *Brady* claim in the instant action is exhausted.

  The motion to amend will be granted and the Court will consider the merits of

Petitioner's *Brady* claim.  The Court agrees with Respondents that, to the extent Petitioner may

be attempting to raise any other constitutional claims in the motion to amend, he fails to

demonstrate that any such claims are exhausted.  Therefore, the motion to amend is granted only

to the extent Petitioner is raising a *Brady* claim based on the prosecution's alleged failure to

disclose exculpatory evidence regarding the criminal history of a prosecution witness discovered

after Petitioner was convicted.

### III. Legal Standards

  The Court must construe the Petition and other papers filed by Petitioner liberally

because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)

6

(per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should

not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with

respect to any claim that was adjudicated on the merits in state court unless the state court

adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  Petitioner bears the burden of proof under § 2254(d).  *See Woodford v.*

*Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S. Ct.

770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an

unreasonable legal or factual conclusion does not require that there be an opinion from the state

court explaining the state court's reasoning."  *Id*. at 784.  Furthermore, "[w]hen a federal claim

has been presented to a state court and the state court has denied relief, it may be presumed that

the state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary."  *Id*. at 784-85.  Even "[w]here a state court's decision is

unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing

there was no reasonable basis for the state court to deny relief."  *Id*. at 784.  In other words, the

Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."

*Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

9

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by

10

definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court make this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV. Analysis

**A. Fourth Amendment Claim**

Respondents argue that Petitioner's Fourth Amendment claim is not cognizable in this habeas corpus action based on *Stone v. Powell*, 428 U.S. 465 (1976).  Under *Stone*, "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone*, 428 U.S. at 494 (footnotes omitted); *see also Miranda v. Cooper*, 967 F.2d 392, 401 (10th Cir. 1992).  A full and fair opportunity to litigate a Fourth Amendment claim in state court includes the procedural opportunity to litigate the claim as well as a full and fair evidentiary hearing.  *See Miranda*, 967 F.2d at 401.  A full and fair opportunity to litigate also "contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards."  *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978).

As noted above, Petitioner successfully moved prior to trial to suppress evidence uncovered in both the initial warrantless search of his home as well as the second search conducted after a warrant had been obtained.  The trial court's order was issued following evidentiary hearings held on November 19 and 27, 2001.  The prosecution appealed and the trial court's order was reversed by the Colorado Supreme Court.  Although the Colorado Supreme Court agreed that the initial warrantless entry and search violated the Fourth Amendment, the Colorado Supreme Court concluded that the second search did not violate the Fourth Amendment because the redacted search warrant affidavit established probable cause to issue a search warrant and remanded the case for further proceedings.  *See Hebert*, 46 P.3d at 484.

On remand, Petitioner filed a motion asking the trial court to reconsider certain factual

findings related to statements in the search warrant affidavit.  The trial court denied the motion to reconsider (*see* #19-2), and after Petitioner was convicted, the Colorado Court of Appeals rejected Petitioner's subsequent challenge to the search warrant affidavit on direct appeal (*see* #9-2 at 4-11).

Petitioner does not challenge the adequacy of the evidentiary hearing and he does not dispute the fact that he had a procedural opportunity to litigate his remaining Fourth Amendment claim in the Colorado courts.  In fact, it is apparent that Petitioner's remaining Fourth Amendment claim was the subject of extensive litigation in the state court proceedings: Petitioner raised the Fourth Amendment issue in the trial court prior to trial; the trial court held two evidentiary hearings on Petitioner's motion to suppress; the issue was addressed in an interlocutory appeal to the Colorado Supreme Court; Petitioner filed a motion to reconsider the trial court's factual findings on remand; and Petitioner raised the issue on direct appeal following his conviction.  In *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999), it was sufficient that trial counsel adequately apprised the trial court of the factual basis for the Fourth Amendment claim, appellate counsel presented the issue to the state appellate court on direct appeal, and the state courts "thoughtfully considered the facts underlying [the] Fourth Amendment claim" but rejected it on the merits by applying appropriate Supreme Court precedents.  Petitioner cannot reasonably argue that he was denied a similar opportunity in the instant action.

With respect to the requirement that there be at least colorable application of the correct constitutional standards, Petitioner apparently concedes that the state courts recited and relied upon the correct Fourth Amendment standards.  Based on the Court's review of the state court

orders relevant to Petitioner's remaining Fourth Amendment claim, the Court agrees and finds

that the state courts recognized and made "colorable application of the correct Fourth

Amendment constitutional standards." *Gamble*, 583 F.2d at 1165.

Petitioner's real argument is that he was denied a full and fair opportunity to litigate his

Fourth Amendment claim in state court because, according to him, the Colorado courts

misapplied controlling Fourth Amendment law by relying on false and inaccurate statements in

the search warrant affidavit to determine that probable cause existed to issue the warrant.

Petitioner also disagrees with the conclusions drawn by the state courts on the basis of the

allegedly false and inaccurate statements in the search warrant affidavit.  However, the trial court

rejected Petitioner's arguments regarding the allegedly false and inaccurate statements and the

Colorado Court of Appeals on direct appeal specifically determined that the statements Petitioner

challenges were not materially false or inaccurate.  (*See* #9-2 at 6-10.)  Although Petitioner

disagrees with that determination, he fails to present clear and convincing evidence to overcome

the presumption of correctness that attaches to the state court's factual findings.  *See* 28 U.S.C. §

2254(e)(1).  Furthermore, Petitioner's disagreement with the conclusions drawn by the state

courts in rejecting his Fourth Amendment claim does not demonstrate he was denied a full and

fair opportunity to present the Fourth Amendment claim, and that is the only relevant question

under *Stone*.  *See Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (rejecting

petitioner's argument that state court misapplied Fourth Amendment doctrine in reaching wrong

conclusions about probable cause because that was not the question before the court); *see also*

*Pickens v. Workman*, 373 F. App'x 847, 850 (10th Cir. 2010) (stating that "[t]he opportunity for

full and fair litigation is not defeated merely because a participant might prefer a different

14

outcome").

For all of these reasons, the Court finds that Petitioner had a procedural opportunity to litigate his Fourth Amendment claim as well as a full and fair evidentiary hearing and that the Colorado courts made "at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble*, 583 F.2d at 1165.  As a result, consideration of the merits of Petitioner's remaining Fourth Amendment claim is barred by *Stone v. Powell* and Petitioner is not entitled to relief on that claim.[1]

## B. Brady Claim

The Court next will address the *Brady* claim Petitioner raises in the motion to amend. Petitioner alleges in support of the *Brady* claim that the prosecution deliberately withheld from the defense exculpatory evidence that was discovered after Petitioner was convicted.  More specifically, Petitioner contends that the prosecution withheld evidence regarding the criminal history of a key witness against him, Richard Paul White.  Petitioner argues that information regarding Mr. White's criminal history was important and necessary to impeach and discredit Mr. White's testimony at Petitioner's trial.  The trial court described the relevant testimony at Petitioner's trial as follows:

> At trial, the prosecution presented evidence to support a theory that [Petitioner] had purchased a Beretta .22 prior to Carol Hebert's murder through the testimony of two witnesses, Linda Davis and Richard White.  Mr. White testified that he had sold a gun to Mike Davis in late 1999.  He believed the gun was either a Beretta .22 or a Cobra[y] .410 derringer.  On cross-examination, Mr. White stated that he was not sure which gun it was.

---

[1] Although the Court determined in a prior order that Petitioner's other two Fourth Amendment claims are unexhausted and procedurally barred, the Court notes that review of the merits of those Fourth Amendment claims also would be barred by *Stone*.

Mike Davis' wife testified that her husband had purchased a gun with a unique double-stamped serial number from Mr. White.  She further testified that she was not sure what type of gun it was, but she knew it was *not a* Beretta .22.  She then stated that in early 2001, her husband sold that gun to [Petitioner].  A double-stamped gun was found in the Hebert home and was determined not to be the murder weapon.

(#31-2 at 3.)  Petitioner maintains that Mr. White's testimony regarding the gun he sold to Mike

Davis was critically important for the following reasons:

[Petitioner] was arrested, on nothing more substantive than spousal suspicion, even before the victim was identified.  No direct demonstrative physical evidence was ever developed against [Petitioner] and the prosecution relied at trial on uncorroborated hearsay, tenuous circumstance, speculative inference and suborned perjury from several sources.  No (actual) murder weapon was ever found, nor any ammunition of the type that killed Mrs. Hebert.  In filling in this critical, and gaping, hole in their case, the prosecution was entirely dependent on the sworn words of Richard Paul White whose testimony thus became critical to the prosecution's theory and which elevated Mr. White to the position of key witness in the proceedings.

Mr. White presented himself very well in court; the defense had no information upon which to impeach his credibility or to call his truthfulness into question in any way.  Mr. White, with seeming thoughtfulness and consideration, described a gun in great detail (including make, model, caliber and, impressively, even the serial number) which he said he had sold and which the prosecution presented (figuratively) to the jury as the murder weapon.

Ten weeks after the trial (and the resultant conviction) of [Petitioner], Mr. White entered a residence in Aurora (as the Hebert residence had been entered) and shot a victim in the head (as Carol Hebert had been shot) and robbed the victim (as Carol Hebert had been robbed) and drove off in the victim's vehicle (as Carol Hebert's car had been driven off).

Mr. White subsequently provided information to Aurora and Denver police that resulted in more than fifty felonies (in addition to the Aurora murder) being charged against him for

16

> crimes he committed during just a "snapshot" six month period
> occurring after Mrs. Hebert's death and before [Petitioner's] trial.
> Mr. White acknowledged numerous murders, kidnappings,
> robberies and rapes.  Mr. White is currently serving three life
> terms without possibility of parole, plus 144 years (all to run
> consecutively), within the Colorado Dept. of Corrections.  His
> guilty pleas allowed him to escape the death penalty in some sort
> of plea deal which the prosecution refuses to provide to
> [Petitioner] (or to even acknowledge having made).

(#26 at 7-8 (citation omitted).)

Under *Brady*, suppression "of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment."  *Brady*, 373 U.S. at 87.  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  "Prejudice satisfying the third element exists 'when the suppressed evidence is material for *Brady* purposes.'"  *Douglas v. Workman*, 560 F.3d 1156, 1173 (10th Cir. 2009) (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)).  Petitioner bears the burden of presenting evidence to establish a *Brady* violation.  *See id.*

Generally, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (internal quotation marks omitted).  A reasonable probability of a different result exists "when the government's evidentiary suppression undermines confidence in the outcome of the trial."  *Id.* at 434 (internal quotation marks omitted).  "[O]nce *Brady* error is established under the *Kyles* materiality standard, there is no need for further harmless-error review" under *Brecht* because "a reasonable probability of a

different result in the proceeding necessarily entails the conclusion that the suppression must

have had substantial and injurious effect or influence in determining the jury's verdict."

*Douglas*, 560 F.3d at 1173-74 (internal citations and quotation marks omitted).

The question of materiality "must be evaluated in the context of the entire record."

*United States v. Agurs*, 427 U.S. 97, 112 (1976).  Therefore, rather than considering each piece

of withheld evidence in isolation, the Court must

> "review the cumulative impact of the withheld evidence; its utility
> to the defense as well as its potentially damaging impact on the
> prosecution's case.  Furthermore, . . . [the Court] evaluate[s] the
> materiality of withheld evidence in light of the entire record in
> order to determine if the omitted evidence creates a reasonable
> doubt that did not otherwise exist.  What might be considered
> insignificant evidence in a strong case might suffice to disturb an
> already questionable verdict."

*Snow v. Sirmons*, 474 F.3d 693, 711 (10th Cir. 2007) (quoting *Banks v. Reynolds*, 54 F.3d 1508,

1518 (10th Cir. 1995)).

Petitioner raised the *Brady* claim in his postconviction motion to vacate his conviction

based on witness perjury and newly discovered evidence.  (*See* #31-1.)  The trial court

determined that no *Brady* violation occurred because the evidence of Mr. White's criminal

history was not material.  (*See* #31-2 at 6.)  The trial court reasoned that the evidence was not

material because, for the same reasons that justified denying Petitioner's motion for a new trial

based on this newly discovered evidence, "[Petitioner] has failed to demonstrate that the there

[sic] is a reasonable probability that had the evidence been disclosed the result of the proceeding

would have been different."  (#31-2 at 6.)

> Here, the newly discovered evidence presented by
> [Petitioner] would probably "'not have produced an acquittal on
> retrial.[']"  First, [Petitioner] asserts that Mr. White now doubts

18

even selling a gun to Mr. Davis.  However, Linda Davis testified at
trial that she was present when Mr. White sold a gun to her
husband in 1999.

Next, [Petitioner] asserts that without Mr. White's
testimony the Prosecution would not have been able to prove the
requisite *mens rea* for first degree murder.  However, there was
ample evidence adduced at trial demonstrating the planning and
premeditation of the murder, such as the use of a silencer, the
"practice" silencer found in the basement, and the fact that the
victim was shot at close range in the back of the head.

The verdict of the jury in this matter is supported by
substantial evidence.  Mr. White's testimony was an attempt to
link [Petitioner] to a .22 caliber weapon, notwithstanding there was
substantial evidence to connect [Petitioner] to a .22 caliber weapon
and the commission of the crime.  It is extremely unlikely, even
without Mr. White's testimony, that the outcome of [Petitioner's]
trial would have been different.

(#31-2 at 5.)

As noted above, the trial court's order was affirmed on appeal.  (See #31-6.)  The

Colorado Court of Appeals determined that no *Brady* violation occurred because Mr. White "was

indicted months after [Petitioner] was convicted, and there is no evidence to suggest that the

prosecutor was aware of [Mr. White's] crimes prior to [Petitioner's] conviction."  (#31-6 at 9.)

Petitioner argues that the trial court applied the wrong materiality standard in rejecting

his *Brady* claim and that the Colorado Court of Appeals erred in failing to recognize that a *Brady*

violation can occur after a trial concludes.  As a result, he contends that the state court decisions

rejecting his *Brady* claim are contrary to clearly established Supreme Court law.

Respondents argue that the decision of the Colorado Court of Appeals is neither contrary

to nor an unreasonable application of clearly established federal law because the Supreme Court,

in *District Attorney's Office for the Third Judicial District v. Osborne*, 129 S. Ct. 2308, 2320

(2009), has determined the prosecution's obligation under *Brady* does not apply after a defendant has been convicted.  In *Osborne*, the Supreme Court made clear that the prosecution's obligation under *Brady* does not extend to exculpatory evidence discovered after a defendant is convicted and the case is closed.  *See id*. at 2319-20; *see also Tevlin v. Spencer*, 621 F.3d 59, 70 (1st Cir. 2010) (noting that the Supreme Court in *Osborne* "has explicitly rejected *Brady's* applicability to postconviction proceedings").

The Court would agree with Respondents' argument if the *Brady* material Petitioner contends was not disclosed had been discovered after Petitioner's conviction was final. However, while the information regarding Mr. White's criminal activities was not discovered until after Petitioner's trial had concluded, his conviction was not yet final because his direct appeal was pending.  *See Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) (stating that a conviction becomes final when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").  Therefore, the Supreme Court's determination in *Osborne* that *Brady* does not extend to the postconviction context does not control the outcome in this action.

The Court notes that it is not entirely clear whether a prosecutor's disclosure obligations under *Brady* continues after a verdict but before the conviction is final, *i.e.*, while the case is on appeal.  It does not appear that any Supreme Court case has applied *Brady* to evidence discovered post-trial.  However, the United States Court of Appeals for the Tenth Circuit has applied *Brady* in a case in which the *Brady* material was not obtained until after trial.  *See Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997).  The Tenth Circuit in *Smith* cited *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987) for the proposition that the prosecution's "duty to disclose is

ongoing and extends to all stages of the judicial process." *Id*. at 820 (citing). *Ritchie*, however, did not involve post-trial discovery of new evidence. Nonetheless, the Tenth Circuit has repeated the general principle that a prosecutor's obligations under *Brady* continue throughout the judicial process in recent cases, including *Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009). Given this authority, the Court will assume without deciding that a prosecutor's failure to disclose evidence post-trial, but before the verdict is final, could amount to a *Brady* violation.

Nonetheless, based on the Court's review of the entire state court record, the Court agrees with the trial court that the evidence regarding Mr. White's criminal history was not material because such evidence does not undermine confidence in the outcome of Petitioner's trial. *See Kyles*, 514 U.S. at 434.

The evidence at Petitioner's trial demonstrated that Petitioner's wife was shot in the back of the head, most likely with a .22 caliber bullet fired through a Listerine bottle used as a silencer. The murder weapon was never found, but thirty-two spent .22 caliber shell casings were found in a makeshift firing range in the basement of Petitioner's home. Another Listerine bottle with gunshot residue also was found in the makeshift firing range.

As noted above, "the Prosecution presented evidence to support a theory that [Petitioner] had purchased a Beretta .22 prior to Carol Hebert's murder through the testimony of two witnesses, Linda Davis and Richard White." (#31-2 at 3.) However, Mr. White testified on cross-examination that he was not sure what type of gun he had sold and Linda Davis testified she was sure the gun Mr. White sold was not a Beretta .22. Therefore, the significance of Mr. White's testimony was diminished substantially even in the absence of any additional evidence to impeach Mr. White.

The Court also is not persuaded by Petitioner's arguments that Mr. White's testimony was critical to satisfying the prosecution's burden of proving the requisite *mens rea* for first degree murder.  Based again on the Court's review of the entire state court record, the Court agrees with the trial court that there was significant evidence of planning and premeditation, including the facts that the victim was shot in the back of the head at close range, the use of a silencer, and the absence of any signs of a struggle.  The record also reveals evidence to connect Petitioner to a .22 caliber weapon even in the absence of Mr. White's testimony because thirty-two spent .22 caliber shell casings were found in the makeshift firing range in Petitioner's home. Therefore, even assuming clearly established federal law provides that *Brady* applies to evidence obtained post-trial, the Court still concludes that Petitioner is not entitled to relief on the *Brady* claim.

For the reasons discussed above, it is ORDERED that Petitioner's "Addendum (Fifth Amendment Claim) in Supplement to Civil Action 11-cv-00021-MSK" (#26), which the Court has construed as a motion to amend, is **GRANTED** to the extent Petitioner seeks to raise a *Brady* claim based on the prosecution's withholding of exculpatory evidence regarding the criminal history of a prosecution witness discovered after trial.  It is FURTHER ORDERED that Petitioner Hal Lewis Hebert's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#3) is **DENIED**.  It is FURTHER ORDERED that no certificate of appealability will issue

because Petitioner has not made a substantial showing of the denial of a constitutional right.  The

Clerk of the Court shall close this case.

Dated this 18th day of November, 2011

BY THE COURT:

Marcia S. Krieger
United States District Judge